IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

GWENDOLYN JOHNSON GREEN,         :
                                 :
    Plaintiff,                   :
                                 :
vs.                              :
                                 :   CIVIL ACTION 13-0048-M
CAROLYN W. COLVIN,               :
Commission of Social Security,   :
                                 :
    Defendant.                   :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 14). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 23). Oral argument was waived in this action (Doc. 24). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED.**

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health

1

Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was forty-seven years old, had completed one year of college (Tr. 175), and had previous work experience as a dishwasher and waitress (*see* Tr. 62-63). In claiming benefits, Plaintiff alleges disability due to obesity, hypertension, headaches, gout, diabetes mellitus, facet arthropathy of the lumbar spine, bursitis, and depression (Doc. 14 Fact Sheet).

The Plaintiff filed applications for disability benefits and SSI on September 20, 2010 (Tr. 150-64; *see also* Tr. 18). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although she could not return to her past relevant work, there were specific light exertional jobs that she could do (Tr. 18-30). Plaintiff requested review of the hearing decision (Tr. 14) by the Appeals Council, but it was denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Green alleges that: (1) The ALJ improperly found that her cervical disc disease was a non-severe impairment; (2) the ALJ did not properly consider her complaints of pain; and (3) the ALJ did not develop a full and fair record (Doc. 14). Defendant has responded to—and denies—these claims (Doc. 19). The relevant evidence of record follows.[1]

On March 18, 2007, Green was seen at Memorial Hermann Hospital following a motor vehicle accident (Tr. 263-91). On admission to the emergency room, Plaintiff complained of clavicle, neck, abdominal and right foot pain for which she was given morphine and a prescription for hydrocodone.[2] Green had full range of motion (hereinafter *ROM*) in all extremities (Tr. 269). X-rays and CT scans were negative, but Plaintiff was encouraged to take it easy for a few days (Tr. 268). The Court notes that some degenerative changes, with anterior osteophytes, were noted in the C5-6, C6-7, and C7-T1 (Tr. 278); facet arthritis of the lower spine was noted (Tr. 282).

---

[1]The Court notes that Plaintiff's asserted date of disability, according to the ALJ, is August 31, 2005 (Tr. 18, 39), though the applications clearly assert a date of July 1, 2008 (Tr. 150, 159). Though confused by this discrepancy, the Court will presume that the ALJ's statement is correct. However, no evidence preceding August 31, 2005 will be considered.

[2]**Error! Main Document Only.***Hydrocodone* is used "for the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

3

Records from the HmH Medical Clinic show that Plaintiff was seen on July 13, 2006 for a mammogram after being battered by her ex-boyfriend (Tr. 307; *see generally* Tr. 293-307).  On August 11, Green complained of a summer cold and dry cough (Tr. 306).  On October 13, she complained of a sore throat and cough; Plaintiff was noted to have hypertension and obesity (Tr. 305). On Valentine's Day 2007, Green had a head cold, dry cough, and ringing in her left ear (Tr. 304).  Six weeks later, nine days after her motor vehicle accident, Plaintiff was seen for neck pain, dizziness, soreness in the right shoulder blade, chest, and abdomen, and right ankle and foot pain; Green was noted to have multiple bruises and contusions in her abdomen and legs (Tr. 303).  Flexeril[3] was prescribed.  On April 9, Plaintiff was seen for head and neck pain and dizziness; she described the pain as a dull ache with occasional sharp pain with associated headaches and muscle spasms (Tr. 302).  Flexeril caused grogginess.  Green's back was noted to be tender along the superior trapezius muscle to where it attached to the cranium; the abdomen was soft with pain on rotation to the left.  She was encouraged to start doing slow stretching exercises and to use heat for the soreness; Flexeril was continued.  On May 10,

---

[3]**Error! Main Document Only.**Flexeril is used along with "rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions."  *Physician's Desk Reference* 1455-57 (48th ed. 1994).

Plaintiff complained of back pain, especially after sitting for a while; the doctor noted minimal back tenderness (Tr. 301). Hypertension was well controlled. On June 27, 2007, Green was still having back spasms; she was told to keep exercising and to take over-the-counter medications (Tr. 300). The doctor also noted that Plaintiff was non-compliant with her hypertension medications and that she was morbidly obese. At the next examination, Plaintiff complained of a cold and a migraine headache and asked for a muscle relaxer; the doctor noted a negative straight leg raise (Tr. 299). Robaxin[4] was prescribed for her back; weight loss was stressed. On March 20, 2008, Green was seen for chronic frontal headaches and neck pain; Naproxyn[5] and Flexeril were prescribed (Tr. 298). She was put on a low salt, 1800 calorie diet and told to walk an hour a day. On May 2, Plaintiff's left foot was hurting for which she was told to take an over the counter medication; she had gained weight and was encouraged to diet and exercise (Tr. 297). Four days later, Green's left foot was still hurting, though she said the Motrin helped; gout was diagnosed and medications were

---

[4]**Error! Main Document Only.***Robaxin* "is indicated as an adjunct to rest, physical therapy, and other measures for the relief of discomforts associated with acute, painful musculoskeletal conditions." *Physician's Desk Reference* 2428 (52nd ed. 1998).

[5]**Error! Main Document Only.***Naprosyn*, or *Naproxyn*, "is a nonsteroidal anti-inflammatory drug with analgesic and antipyretic properties" used, *inter alia*, for the relief of mild to moderate pain. *Physician's Desk Reference* 2458 (52nd ed. 1998).

prescribed (Tr. 296). Various prescriptions were tried over the next month to treat the gout (Tr. 293-95).

Records from the Alabama Free Clinic show that Green was seen on May 12, 2009 at which time she characterized her health as fair; she reported a past medical history of hypertension, gout, chronic sinusitis, obesity, borderline diabetes mellitus, and anemia (Tr. 341, 356; *see generally* Tr. 312-63). Her problem at that time was chronic fluid retention. On June 2, Plaintiff complained of pain in her right shoulder (Tr. 340). On July 7, Green again complained of right shoulder pain, causing an inability to lift her shoulder; hypertension medications were prescribed (Tr. 339). On October 6, Plaintiff was treated for a sore throat and bad cough and her continuing problems of hypertension and obesity; the doctor noted that she was morbidly obese (Tr. 353-54). Prescriptions included Naproxen. Two days later, Green was seen again for her sore throat and cough for which she was given an anti-bacterial prescription and an inhaler (Tr. 351-52). On February 2, 2010, Plaintiff complained of coughing with some wheezing; she was told to gargle with apple cider vinegar diluted with water (Tr. 345). On February 23, she was having a difficult time sleeping (Tr. 342). On March 23, Green was still coughing and wheezing; lungs were noted to be clear (Tr. 346). On April 6, Plaintiff was seen for congestion and a cough (Tr. 344, 349-50). On July

6, Green complained of edema in her legs and feet; the physical exam was within normal limits (Tr. 347-49). Plaintiff was encouraged to lose weight. On October 19, 2010, Plaintiff was seen for follow-up and to get prescriptions filled; her abdomen was noted to be soft, but non-tender (Tr. 337-38). Green was given a prescription for Prozac.[6] On November 30, 2010, Plaintiff complained of having a lot of migraines recently and not sleeping well; her knees had been bothering her (Tr. 335-36). Green was noted to have gained eight pounds and had back pain; Amitriptyline[7] was prescribed and the prescription for Naproxen was continued. On March 29, 2011, Green was seen for head and back pain; the physical exam was described as being within normal limits (Tr. 329-31). On May 31, Plaintiff went to the Clinic with complaints of a headache, pain in the back, hip, and right arm; she was noted to be obese, to have full ROM in all extremities, but without chest pain or shortness of breath (Tr. 325-27). On October 25, Green had complaints of a rash, a backache, and right knee pain; she was unable to lift her right arm very high (Tr. 317-19). She was noted to have a rash on her abdomen and breast, thought to be a reaction to her hypertension medication; Plaintiff was told to cut back on her carbohydrates,

---

[6]**Error! Main Document Only.**_Prozac_ is used for the treatment of depression. _Physician's Desk Reference_ 859-60 (52nd ed. 1998).

[7]**Error! Main Document Only.**_Amitriptyline_, marketed as _Elavil_, is used to treat the symptoms of depression. _Physician's Desk Reference_ 3163 (52nd ed. 1998).

7

weighing in at 395 pounds.  The doctor noted that Green was in the pre-diabetic range.  On November 22, Plaintiff complained of depression and not feeling well; several prescriptions were refilled (Tr. 313-16).

At the hearing before the ALJ, Plaintiff testified that she was depressed, leading to weight gain (Tr. 40-).  She also had constant headaches every day for which she took Naproxen; sometimes they are dull while others have sharp, shooting pain (Tr. 40-).  She had worked part-time but had to quit because of back and knee pain.  Green was involved in motor vehicle collisions in 1995 and 2007 from which she had back and knee pain; pain was constant and sharp in the lower back.  Her right arm hurt and was hard to lift.  Plaintiff was borderline diabetic and had high blood pressure.  She had gout, but had not had any problems for about a year.  Green took muscle relaxers. She could walk for only about half a block before her hips and right knee gave out; she could only stand for a few minutes. Plaintiff could sit for about thirty minutes.  Because of the headaches, she could not concentrate.  Green drove, but it hurt her lower back to get in and out of the truck.  She sleeps during the day.  Plaintiff rated her back pain as six on a ten-point scale; her headaches were a six or seven.  She could not lift five pounds because of her right arm pain.  Green could not sleep at night because of back pain.

8

This concludes the relevant evidence of record.

In bringing this action, Plaintiff first claims that the ALJ improperly found that her cervical disc disease was a non-severe impairment. In *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984), the Eleventh Circuit Court of Appeals held that "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *Flynn v. Heckler*, 768 F.2d 1273 (11th Cir. 1985); *cf*. 20 C.F.R. § 404.1521(a) (2013).[8] The Court of Appeals has gone on to say that "[t]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). It is also noted that, under SSR 96-3p, "evidence about the functionally limiting effects of an individual's impairment(s) must be evaluated in order to assess the effect of the impairment(s) on the individual's ability to do basic work activities."

A CT of the cervical spine, on March 18, 2007, revealed

---

[8]"An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."

9

"[n]o fracture, malalignment, or other acute bony abnormality"
(Tr. 278). There were "[d]egenerative changes with anterior
osteophytes of C5/6, C6/7, and C7/T1 [but n]o soft tissue
abnormality" (*id.*). Green had full ROM in all extremities (Tr.
269). This was the last occasion in the record that Plaintiff
was encouraged to take it easy for a few days (Tr. 268). Three
months later, although she was still complaining of back spasms,
Green was told to keep exercising and taking over-the-counter
medications (Tr. 300). In March 2011, though Plaintiff
complained of back pain, her physical exam was described as
being within normal limits (Tr. 329-31); two months later, she
again complained of back pain, but was found to have full ROM in
all extremities (Tr. 325-27). The Court notes that no doctor
has asserted that Plaintiff's cervical spine degeneration would
impair her ability to work in any way; furthermore, there is no
objective medical evidence demonstrating this inability. As
such, Green's claim that this impairment is severe is
unsupported by the evidence.

Green next claims that the ALJ did not properly consider
her complaints of pain (Doc. 14, pp. 12-17). The standard by
which the Plaintiff's complaints of pain are to be evaluated
requires "(1) evidence of an underlying medical condition and
either (2) objective medical evidence that confirms the severity
of the alleged pain arising from that condition or (3) that the

objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). The Eleventh Circuit Court of Appeals has also held that the determination of whether objective medical impairments could reasonably be expected to produce the pain was a factual question to be made by the Secretary and, therefore, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence." *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir.), *vacated for rehearing en banc*, 774 F.2d 428 (1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Furthermore, the Social Security regulations specifically state the following:

> statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. 404.1529(a) (2013).

In her determination, the ALJ first summarized the medical evidence and then Plaintiff's statements about her impairments and abilities. The ALJ then found that although she had impairments, Green's statements were not credible. She did this by pointing out that Plaintiff's complaints to her treatment providers were inconsistent with the statements that she made at the hearing (Tr. 24). The ALJ noted that Green did not seek treatment regularly and that her complaints did not consistently concern the same ailments; it was also noted that she had been treated very conservatively as it was generally "limited to medication management and lifestyle advice" (Tr. 25). Finally, the ALJ specifically pointed out that Green's allegations regarding medication side effects were not supported by office treatment notes (Tr. 27).

The Court notes that the ALJ took Plaintiff's testimony into account in finding that she had the residual functional capacity to stand and walk for no more than fifteen minutes and sit for more than thirty minutes at a time; she further found Green unable to reach overhead, climb, kneel, and crawl and was limited in other abilities as well (Tr. 23). Nevertheless, Plaintiff has brought forth no objective medical evidence, as required in *Holt*, to support her claims of incapacitating pain and limitation. The Court finds substantial support for the ALJ's conclusions.

Finally, Green has claimed that the ALJ did not develop a

full and fair record (Doc. 14, pp. 9-12).  Plaintiff more specifically asserts that the ALJ should have ordered a consultative examination to provide a residual functional capacity (hereinafter *RFC*) evaluation.  The Eleventh Circuit Court of Appeals has required that "a full and fair record" be developed by the Administrative Law Judge even if the claimant is represented by counsel.  *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

The Court notes that the ALJ is responsible for determining a claimant's RFC.  20 C.F.R. § 404.1546 (2013).  The Court also notes that the social security regulations state that Plaintiff is responsible for providing evidence from which the ALJ can make an RFC determination.  20 C.F.R. § 416.945(a)(3) (2013).

The evidence in this record is scant.  Though it spans more than five years, the only impairment that is consistently referenced is Plaintiff's obesity.  Treatment for all impairments has been sporadic and rarely references a particular malady over a continuing period of time.  The Court finds that it was unnecessary for the ALJ to have embellished this record in any respect.  Plaintiff's claim otherwise is without merit.

Green has raised three claims in bringing this action.  All are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S.

13

at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 8th day of October, 2013.

                                    s/BERT W. MILLING, JR.
                                    UNITED STATES MAGISTRATE JUDGE